UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXSTAR BROADCASTING, INC.<br><br>    Plaintiff,<br><br>v.<br><br>DIRECTV, LLC<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Nexstar Broadcasting, Inc. ("Plaintiff" or "Nexstar") files this Complaint against Defendant DIRECTV, LLC ("DIRECTV") and respectfully alleges as follows:

## I. INTRODUCTION

This case involves a straightforward breach of contract by DIRECTV, which refuses to comply with the plain and unambiguous terms for which it bargained.  Under the contract, DIRECTV agreed to pay (1) a License Fee in exchange for the right to retransmit Nexstar stations, and (2) an Unlaunched Station Fee in exchange for not being required to immediately launch one particular Nexstar station.  DIRECTV specifically agreed to pay the Unlaunched Station Fee until if and when it launched this station.

DIRECTV now erroneously claims that its obligation to pay the Unlaunched Station Fee depends on the station retaining its network affiliation.  Nothing in the contract supports DIRECTV's wishful thinking.  Indeed, the contract plainly places the risk on DIRECTV that the station might lose its network affiliation during the contract's term.

Because Nexstar ordinarily requires programming distributors to retransmit all Nexstar stations, Nexstar purposely bargained for—and relied on—DIRECTV's express promise to pay the Unlaunched Station Fee.  Nexstar has fully performed its obligations under the contract.

1

Nexstar is likewise entitled to DIRECTV's full compliance and has incurred damages because DIRECTV refuses to honor its clear obligations.

## II. PARTIES

1. Plaintiff Nexstar Broadcasting, Inc. is a Delaware corporation with a principal place of business in Irving, Texas.

2. Defendant DIRECTV, LLC is a limited liability company organized under the laws of California; on information and belief, DIRECTV is not a citizen of Delaware or Texas. DIRECTV may be served with process by serving its registered agent: CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California, 90017.

## III. JURISDICTION & VENUE

3. This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

4. This Court has personal jurisdiction over DIRECTV, and the Southern District of New York is a proper venue for this lawsuit, pursuant to Section 17 of the Retransmission Consent Agreement between Nexstar and DIRECTV that is the subject of this lawsuit, attached hereto as Exhibit A.

## IV. FACTUAL BACKGROUND

### A. DIRECTV's Obligations to Nexstar

5. Nexstar, a wholly-owned subsidiary of Nexstar Media Group, Inc., owns or operates more than one hundred television stations across the country. DIRECTV, a wholly-owned subsidiary of AT&T Inc., is a provider of satellite television services.

6. On July 3, 2015, Nexstar and DIRECTV entered a Retransmission Consent Agreement (the "Agreement"). The Agreement provides that DIRECTV must pay Nexstar a

2

monthly "License Fee" in exchange for the right to retransmit Nexstar television stations. The License Fee consists of specified rates, multiplied by the average number of subscribers or equivalent viewing units. *See* Ex. A, § 8(a).

7. Ordinarily, Nexstar requires programming distributors to retransmit **all** Nexstar stations. However, as an accommodation to DIRECTV, Nexstar agreed that DIRECTV was not required to retransmit a particular station, "WHAG," a/k/a "WDVM", if: (1) in good faith DIRECTV considered launching the station, and (2) DIRECTV paid an Unlaunched Station Fee "*until such time* as DIRECTV launches Station WHAG." *See* Ex. A, §§ 4(a)(v), 8(a).

8. Specifically, the Agreement provides:

> In addition to the License Fees set forth above, DIRECTV shall pay License Fees at the foregoing Network rate on an aggregate of 220,000 Subscribers (the "Unlaunched Station Fee") until such time as DIRECTV launches Station WHAG in the Washington, D.C. Local Territory. Upon such launch, payment of the Unlaunched Station Fee shall cease and Station Group shall receive License Fees for Station WHAG based on the actual number of Subscribers receiving WHAG.

9. The Unlaunched Station Fee is calculated using the same base rates as the License Fee that DIRECTV must pay for "each Stream . . . affiliated with a Network," but the base rates are multiplied by 220,000 instead of the number of actual subscribers or equivalent viewing units. *See* Ex. A, § 8(a). The parties agreed to this highly precise calculation as the distinct cost of this particular accommodation to DIRECTV. If DIRECTV wishes to no longer pay the Unlaunched Station Fee, the Agreement requires DIRECTV to launch WHAG and pay the "License Fees . . . based on the actual number of Subscribers." *Id.*

10. DIRECTV's commitment to pay the Unlaunched Station Fee "*until such time* as DIRECTV launches Station WHAG" was essential to induce Nexstar to enter the Agreement. Nexstar relied on DIRECTV's express promise to compensate Nexstar for accommodating

3

DIRECTV's decision to indefinitely forgo carrying WHAG. Nexstar expected and is entitled to DIRECTV's full compliance with this obligation.

### B. DIRECTV's Breach of its Obligations to Nexstar

11. On November 13, 2018, DIRECTV advised Nexstar that it would no longer pay the Unlaunched Station Fee. Further, DIRECTV claimed to have overpaid Nexstar by $10,549,784.74, in payments of the Unlaunched Station Fee. DIRECTV's stated reason for declining to perform was that WHAG was no longer affiliated with NBC as of July 1, 2016.

12. DIRECTV's position is untenable. The Agreement unambiguously and specifically requires DIRECTV to pay the Unlaunched Station Fee (1) "in addition to" the License Fees that it must pay for network-affiliated streams, and (2) "until such time as DIRECTV launches Station WHAG." Nothing in the Agreement makes DIRECTV's obligation for the Unlaunched Station Fee subject to WHAG retaining network affiliation.

13. If the parties had intended to make the Unlaunched Station Fee subject to WHAG retaining network affiliation, they could easily have clarified that intent in any number of ways.

14. Indeed, the parties did just that in provisions that directly follow the provision governing the launch of WHAG. *See, e.g.*, Ex. A, § 4(a)(vi) (providing that DIRECTV's obligations to retransmit KYLE-TV "shall be subject to such Primary Stream remaining affiliated with the MNT network"); § 4(a)(vii) (providing that DIRECTV's obligations to retransmit KKEY-LD "shall be subject to such Primary Stream remaining affiliated with the Telemundo network"); § 4(a)(viii)(A) (providing that DIRECTV may cease carrying Multiplexed Programming Streams "if such Stream ceases its affiliation with the applicable Big-6 Network"). The parties also provided, in detail, for the calculation of License Fees "in the event the CW network ceases to operate as a network." *See* Ex. A, § 8(a).

15.     By contrast, the Agreement's specific provisions relating to WHAG contain no such language.  The Agreement simply requires DIRECTV to in good faith consider launching WHAG during the term of the Agreement, and to pay the Unlaunched Station fee until it launches WHAG.  *See* Ex. A, §§ 4(a)(v), 8(a).  As such, DIRECTV plainly agreed to bear the risk of WHAG losing network affiliation.

16.     On January 16, 2019, Nexstar sent DIRECTV a demand letter requesting that DIRECTV comply with its obligations under the Agreement.  Nexstar also offered to meet with DIRECTV at a mutually agreed time to resolve the matter without litigation.  Nexstar and DIRECTV subsequently conferred by telephone, along with counsel for both parties, but the parties were unable to resolve the dispute, as DIRECTV continues to refuse to comply with its obligations under the Agreement.

17.     DIRECTV's position contravenes the plain terms of the Agreement.  Based on this erroneous position, DIRECTV has not paid $1,012,000 in Unlaunched Station Fees owed to Nexstar, plus an additional $102,300 for not paying the correct rate, a difference of $0.31 per subscriber for one and a half months, as DIRECTV's payment cycle ends on the 15th of each month.  DIRECTV has thereby failed to perform its express obligations under the Agreement and deprived Nexstar of its bargained-for compensation.

## V. CAUSES OF ACTION

### A. Breach of Contract

18.     As the factual basis for its claim, Nexstar incorporates the preceding paragraphs of this Complaint as if set forth fully here.

19.     Nexstar alleges that Nexstar and DIRECTV entered a valid, enforceable Agreement that requires DIRECTV to pay License Fees in exchange for the right to retransmit Nexstar

stations, as well as an Unlaunched Station Fee in exchange for DIRECTV not being required to immediately launch station WHAG.

20. Nexstar alleges that it performed all of its obligations under the Agreement, which are particularly set forth in Section 4(b). *See* Ex. A, § 4(b)(i)–(vii). Nexstar further alleges that all conditions precedent have occurred or been performed.

21. Nexstar alleges that DIRECTV has breached the Agreement by failing to pay $1,012,000 in Unlaunched Station Fees owed to Nexstar, plus an additional $102,300 for not paying the correct rate.

22. Nexstar alleges that DIRECTV's breach has caused damages to Nexstar by depriving Nexstar of its bargained-for compensation under the Agreement.

## VI.  JURY DEMAND

23. Nexstar demands a trial by jury.

## VII.  PRAYER FOR RELIEF

24. Based on the foregoing allegations, Nexstar prays the Court enter judgment in Nexstar's favor on its claim against DIRECTV and award the following remedies against DIRECTV:

   a. Actual damages for breach of contract;

   b. Reasonable attorney's fees, pursuant to Section 8(c) of the Agreement;

   c. Prejudgment and post-judgment interest as permitted by law;

   d. Costs;

   e. And any other legal or equitable relief that Nexstar may be entitled to recover.

Dated: May 3, 2019   Respectfully submitted:

*/s/ John T. Cox III*
John T. Cox III (*pro hac* admission pending)
Texas Bar No. 24003722
Email:  tcox@lynnllp.com
Paulette C. Miniter (*pro hac* admission pending)
Texas Bar No. 24102213
Email:  pminiter@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:  (214) 981-3800
Facsimile:  (214) 981-3839

**ATTORNEYS FOR PLAINTIFF NEXSTAR BROADCASTING, INC.**

7